IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SIMON PIRELA, a/k/a SALVADOR MORALES, <br><br> Petitioner, <br><br> v. <br><br> THE DISTRICT ATTORNEY OF THE COUNTY OF PHILADELPHIA, et al., <br><br> Respondents. | CIVIL ACTION <br> NO. 00-5331 |

## OPINION

**Slomsky, J.**                                                                     **May 16, 2014**

## I.      INTRODUCTION

Before the Court is the Second Amended Petition of Simon Pirela a/k/a Salvador Morales ("Petitioner") for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 36.) Petitioner contends that he is entitled to relief because he is actually innocent of the underlying crimes for which he was convicted in state court.  He also seeks relief based on a variety of alleged constitutional violations, including violations of his Sixth Amendment right to effective assistance of counsel and his Fourteenth Amendment right to due process of law.

Following a review of the filings by the parties and the pertinent state court records, United States Magistrate Judge Henry S. Perkin issued a Report, recommending that the Second Amended Petition for Writ of Habeas Corpus be denied and that a certificate of appealability not be issued.  (Doc. No. 62.)  Petitioner filed a timely response to the Report and Recommendation, containing his objections.  (Doc. No. 67.)  Those objections are now before the Court.[1]

---

[1] For purposes of this Opinion, the Court has considered the Second Amended Petition for a Writ of Habeas Corpus with accompanying appendices (Doc. No. 36), the Response in Opposition

## II.    BACKGROUND

On March 19, 1984, sitting without a jury,[2] the Honorable Joseph T. Murphy of the

Philadelphia County Court of Common Pleas found Petitioner guilty of second-degree murder,

criminal conspiracy, and robbery in connection with the shooting death of Ignacio Slaffman

("Slaffman") on August 15, 1982.  (Doc. No. 62 at 5.)  On March 27, 1985, Judge Murphy

sentenced Petitioner to a mandatory life sentence without the possibility of parole for the second-

degree murder conviction.[3]  (Id.)  On June 12, 1986, the Superior Court of Pennsylvania affirmed

the judgment of sentence.  Commonwealth v. Pirella, 513 A.2d 1077 (Pa. Super. Ct. 1986)

(unpublished memorandum opinion).[4]  On December 29, 1986, the Pennsylvania Supreme Court

denied allowance of appeal.  See Commonwealth v. Pirela, No. 1622 EDA 2009, 3 (Pa. Super.

Ct. May 4, 2011) (unpublished memorandum opinion).  Court-appointed counsel, Edward

Schulgen, Esquire, represented Petitioner at his preliminary hearing, trial, and in all direct appeal

proceedings. (Doc. No. 62 at 1-2.)

The Superior Court of Pennsylvania described the facts and procedural history of the case

as follows:

> In 1984, [Petitioner] and his co-defendant, Heriberto Pirela, were convicted of
> second-degree murder, robbery, and criminal conspiracy as a result of their
> involvement in the robbery of a pizzeria in Philadelphia in 1982.  During the

with accompanying exhibits (Doc. No. 53), Petitioner's Reply in further support of the Petition (Doc. No. 57), the Report and Recommendation of the United States Magistrate Judge Henry S. Perkin (Doc. No. 62), Petitioner's Objections to the Report and Recommendation (Doc. No. 67), and the pertinent state court record.

[2] On March 2, 1984, Petitioner and his brother, Heriberto Pirela, waived their right to a jury trial and were tried as co-defendants in a bench trial before Judge Murphy.  (Doc. No. 62 at 2.)

[3] Petitioner was also sentenced to a consecutive five to ten-year term for the criminal conspiracy conviction.  (Doc. No. 62 at 5.)

[4] Petitioner's last name is incorrectly spelled as "Pirella" in the caption of this case in the Superior Court of Pennsylvania.

2

course of the robbery, the pizzeria's owner [Slaffman] was shot and killed.  In addition to these two men, Orlando "Dice" Maisonet ("Maisonet"), Ervin "Corvo" Martinez ("Martinez"), Heriberto "Eddie" Colon ("Colon"), Jorge "Georgie" Figueroa, and a man known as "Chicago" participated in the crime.

At trial, the Commonwealth's main witness was Colon, who had pleaded guilty to third-degree murder and robbery for his part in the crime.  Colon explained how the group had planned and executed the robbery/murder.  It was alleged that Colon leaped over the counter and ordered everyone in the pizzeria down on the floor.  [Petitioner] emptied the cash register and took a metal cashbox kept under the counter.  When the owner tried to grab one of the robbers, Maisonet shot him in the stomach.  The robbers fled in a getaway car and divided the proceeds. [Petitioner] and his brother then buried the guns used.

As part of his defense, [Petitioner] attempt to call Carlos Edwardo Tirado ("Tirado") and Martinez in an effort to demonstrate that Colon was not present at the time of the robbery.  Prior to trial, Martinez admitted his involvement in the robbery/murder and entered a plea of guilty to third-degree murder and robbery. According to trial counsel's offer of proof, Tirado was not directly involved in the crime.  Rather, according to his statement to police, Tirado said that the robbers came to his house immediately after the crime occurred and told him what had happened.  The Commonwealth had not charged Tirado with any crime.

[Tirado and Martinez] asserted their Fifth Amendment right against self-incrimination.  Tirado's lawyer, Edwin Miller, advised him not to testify based upon a conversation he had with Tirado which led him to believe that Tirado might testify to more than what he said in his statement to the police and, thereby, incriminate himself.  The trial court denied trial counsel's request for a hearing to test the validity of Tirado's assertion of his Fifth Amendment privilege. Martinez's lawyer, Louis Small, advised Martinez not to testify based upon Martinez's involvement in the murder.  Rather than request a hearing, trial counsel asked the trial court to grant Martinez immunity.  This request was also denied.

***

Almost ten years [after the Pennsylvania Supreme Court denied allowance of appeal], on June 25, 1996, [Petitioner] filed a PCRA petition claiming, inter alia, that he had newly discovered evidence that demonstrated Colon had given perjured testimony at [Petitioner's] 1984 trial.  [Petitioner] stated that Colon had testified for the Commonwealth in the 1992 trial of Maisonet and gave a version of events that differed in some respects to the version he gave at [Petitioner's] 1984 trial.  [Petitioner] argued that this proved Colon committed perjury at his trial.[5]

---

[5] Petitioner filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq.  The PCRA petition was assigned to the

Following a hearing, the PCRA court determined that each of [Petitioner's] claims were meritless. [The Superior Court of Pennsylvania] affirmed the denial of relief on August 23, 1999. Commonwealth v. Pirela, 745 A.2d 45 (Pa. Super. Ct. 1999) (unpublished opinion). A panel of this court reasoned:

> The evidence offered by [Petitioner] does not meet the [test for after discovered evidence]. While Colon did testify in 1992 that he lied when he testified in 1984 that [Petitioner] ordered Maisonet to kill the victim, Colon's testimony at both trials clearly was consistent to the fact that [Petitioner] fully participated in the planning and execution of the robbery/murder. Thus, the fact that Colon, in a trial held eight years after [Petitioner's] trial, stated that he lied about the circumstances leading to the shooting of the victim would not compel a different result. The PCRA court, therefore, properly denied [Petitioner] relief on this basis.

Id. at *7. The Pennsylvania Supreme Court denied allowance of appeal on February 3, 2000. Commonwealth v. Pirela, 751 A.2d 188 (Pa. 2000).

In the meantime, Maisonet appealed his murder conviction and was awarded a new trial. A retrial was held on January 10, 2005 and Colon testified again. Maisonet was ultimately acquitted of all charges. Thereafter, on December 21, 2005, [Petitioner] filed a second PCRA petition. In this petition, [Petitioner] raised a newly-discovered evidence claim asserting that Colon must have lied at his trial as he gave different testimony at Maisonet's re-trial. The PCRA court found [Petitioner's] petition time-barred and denied relief on March 30, 2009.

Pirela, No. 1622 EDA 2009 at 1-5. On May 4, 2011, the Superior Court of Pennsylvania

affirmed the PCRA court's denial of Petitioner's second PCRA petition as time-barred. Id. at 10.

On October 20, 2000, after the Pennsylvania Supreme Court denied allowance of appeal

for Petitioner's first PCRA petition, Petitioner filed a pro se Petition for a Writ of Habeas Corpus

in this Court. (Doc. No. 1.) On February 1, 2001, Robert Brett Dunham, Esquire, of the Federal

Defender's Office entered his appearance on behalf of Petitioner. (Doc. No. 62 at 9.) Petitioner

has been represented by counsel since then and is no longer proceeding pro se. On October 29,

---

Honorable Eugene H. Clarke, Jr., and on October 22, 1996, Janis Smarro, Esquire, was appointed to represent Petitioner. (Doc. No. 62 at 6.) After he was appointed counsel, an amended PCRA petition was filed.

4

2001, Petitioner filed an Amended Petition for a Writ of Habeas Corpus.[6]  (Doc. No. 22.)  On

December 17, 2008, the Court referred the case to United States Magistrate Judge Henry S.

Perkin for a Report and Recommendation.  (Doc. No. 28.)  Petitioner was given leave to file an

amended petition.  (Doc. No. 30.)  On June 11, 2009, Petitioner filed a Second Amended

Petition.  (Doc. No. 36.)  On February 27, 2014,[7] following a review of all the filings by the

parties and the state court record, the Magistrate Judge issued a Report, recommending that the

Second Amended Petition for Writ of Habeas Corpus be denied and that a certificate of

appealability not be issued.  (Doc. No. 62.)  Petitioner filed timely objections to the Report and

Recommendation.  (Doc. No. 67.)  Those objections are now before the Court for consideration.

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge is

permitted to designate a magistrate judge to make proposed findings and recommendations on

petitions for post-conviction relief.  Any party may file objections in response to the magistrate

judge's Report and Recommendation.  Id. at § 636(b)(1)(C).  Whether or not an objection is

made, a district judge "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.  The [district] judge may also receive further

---

[6] After Petitioner filed his Amended Petition for a Writ of Habeas Corpus, Judge Giles—who
was presiding over the case at the time—held the case in abeyance in connection with state
court proceedings initiated to determine whether Petitioner's death sentence in another case
should be vacated because of Petitioner's intellectual disability.  (Doc. No. 62 at 11.)
Evidentiary hearings were held from October 20, 2003 through November 17, 2003 in front of
Judge Carolyn Engel Temin of the Philadelphia Court of Common Pleas.  (Id.)  On April 30,
2004, Judge Temin found Petitioner to be intellectually disabled and vacated his death sentence
in that case, pursuant to Atkins v. Virginia, 536 U.S. 304 (2002).  (Id.)  On August 20, 2007, the
Pennsylvania Supreme Court affirmed the decision.  (Id.)  The related proceedings in this Court
resumed thereafter.

[7] In addition to this habeas petition, the Magistrate Judge assigned to this case was also tasked
with issuing Report and Recommendations for three additional habeas petitions filed by
Petitioner.  Given the age of all four cases and the complexity of the issues involved, it
undoubtedly took a few years for the Magistrate Judge to review each petition thoroughly.

evidence or recommit the matter to the magistrate judge with further instructions." Id.  "[I]t must be assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court." Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987).  See also 28 U.S.C. § 636(b).

In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's Report and Recommendation.  Under that rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections[.]" Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012).  Upon review, "[a district judge] shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C).  De novo review is non-deferential and generally permits the district court to conduct an "independent review" of the entire matter.  Salve Regina College v. Russell, 499 U.S. 225, 238 (1991).  "Although [the] review is de novo, [a district judge] [is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980)).

## IV.    ANALYSIS

In his Second Amended Petition for a Writ of Habeas Corpus, Petitioner set forth ten (10) grounds for relief based on his actual innocence claim and various constitutional violations.  (Doc. No. 36.)  The Magistrate Judge found Petitioner's claims to be without merit and recommended that the Second Amended Petition be denied.  (Doc. No. 62.)  Petitioner subsequently filed a response to the Report and Recommendation, lodging four (4) specific objections to the Magistrate Judge's findings.  (Doc. No. 67.)  The Court will address each

objection seriatim.  For reasons that follow, the Court will adopt and approve the Magistrate

Judge's Report and Recommendation, denying Petitioner's claims for relief.

### A. Petitioner's First Objection to the Report and Recommendation is Without Merit Because His Freestanding Claim of Actual Innocence is Not Cognizable

In his Second Amended Petition, Petitioner argued that he is entitled to habeas relief

because he is actually innocent of the underlying crimes for which he was convicted.[8]  (Doc.

No. 36 at 30.)  According to Petitioner, he "was not present during the robbery/murder of Ignacio

Slaffman."  (Id. at ¶ 70.)  Instead, he alleges that, at the time of the crime, he was in bed with his

common-law wife, Maritza DeJesus.  (Id. at ¶ 75.)  The Magistrate Judge recommended that this

freestanding claim of actual innocence be denied because this is not a capital case, and therefore,

this claim is not cognizable on federal habeas review.  (Doc. No. 62 at 21.)  Petitioner objects to

that finding, asserting that "the Magistrate Judge erroneously concluded that freestanding claims

of actual innocence are only available in capital cases."  (Doc. No. 67 at 2.)

In denying Petitioner's freestanding claim of actual innocence as a basis for habeas relief,

the Magistrate Judge relied on House v. Bell, 547 U.S. 518, 554 (2006).  (Doc. No. 62 at 21.)  In

House, a habeas petitioner attempted to challenge his state murder conviction and death sentence

by introducing evidence which allegedly demonstrated his innocence.  The Court found that the

evidence was insufficient to render his imprisonment and death sentence unconstitutional under

Herrera v. Collins, 506 U.S. 390 (1993).  "In Herrera, . . . the Court assumed without deciding

that 'in a capital case a truly persuasive demonstration of 'actual innocence' made after trial

---

[8] Petitioner argued that "[h]is innocence is both [1] a substantive claim that must be granted and [2] a procedural gateway through which this court must consider all of his claims, irrespective of any defense of waiver or procedural default" that Respondents asserted.  (Doc. No. 36 at ¶ 69.)  Petitioner's first objection challenges the Magistrate Judge's treatment of Petitioner's substantive, or "freestanding," actual innocence claim.  Petitioner also raises objections relating to the treatment of his procedural "gateway" claim, which are discussed infra.

would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim.'" House, 506 U.S. at 417 (citations omitted).  Because the allegedly exculpatory evidence in Herrera fell far short of this extraordinarily high hypothetical burden, the Court left open "the question whether federal courts may entertain convincing claims of actual innocence." Herrera, 506 U.S. at 427 (O'Connor, J., concurring).  To this day, the Supreme Court "[has] not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 133 S. Ct. 1924, 1931 (2013).  In Herrera, the Court simply assumed that such a claim may be available in certain capital cases.

Neither Herrera nor House expressly held that freestanding claims of actual innocence can serve as a basis for federal habeas relief in a capital or a non-capital case.  Furthermore, the Court has made clear that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." Herrera, 506 U.S. at 400; Fielder v. Varner, 379 F.3d 113, 122 (3d Cir. 2004).

Here, any hypothetical distinction between capital and non-capital cases is of no moment. Petitioner has failed to demonstrate that an independent constitutional violation occurred in his underlying criminal trial.  Without making this showing, Petitioner's alleged claim of actual innocence cannot provide a basis for federal habeas relief.[9]  For this reason, the Court agrees with the Magistrate Judge that Petitioner's freestanding claim of actual innocence is not cognizable here.

---

[9] The Court has not considered whether the evidence put forth by Petitioner meets Herrera's hypothetical standard for establishing actual innocence.

**B.  Petitioner's Second Objection to the Report and Recommendation is Without Merit Because the Magistrate Judge Engaged in a Proper <u>Schlup</u> Analysis**

Aside from arguing that his innocence can serve as a freestanding basis for federal habeas relief, Petitioner also argued that his demonstration of actual innocence can serve as a gateway for the Court to review substantive claims which may have been waived or procedurally defaulted.  (Doc. No. 36 at ¶ 69.)  This procedural mechanism is known as a <u>Schlup</u> claim.  The Magistrate Judge found that the evidence put forth by Petitioner was not sufficient to create a gateway to consider defaulted constitutional claims.  (Doc. No. 62 at 22-25.)  Petitioner objects to this finding, contending that the Magistrate Judge "erroneously opined that certain pieces of evidence could not support [his] <u>Schlup</u> gateway claim."  (Doc. No. 67 at 3.)

The <u>Schlup</u> gateway claim was first articulated by the Supreme Court in <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).  Under <u>Schlup</u>, a petitioner's claim of actual innocence is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim[s] considered on the merits."  <u>Schlup</u>, 513 U.S. at 315 (quoting <u>Herrera</u>, 506 U.S. at 404).  To trigger this procedural mechanism, a habeas petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in the [sic] light of the new evidence."  <u>Id.</u> at 327.  After a petitioner has satisfied this standard, the court may consider any constitutional claims that would ordinarily be unreviewable because they have been waived or are procedurally defaulted.

> In the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims.  Yet a petition supported by a convincing <u>Schlup</u> gateway showing "raise[s] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial without the assurance that that trial was untainted by constitutional error"; hence, "a review of the merits of the constitutional claims" is justified.

<u>House</u>, 547 U.S. at 537 (quoting <u>Schlup</u>, 513 U.S. at 317).

In order to determine whether a habeas petitioner's claim of actual innocence may act as a procedural gateway under Schlup, a federal court must consider the following: "[1] whether [the petitioner] has presented 'new reliable evidence[10] . . . [that was] not presented at trial,' and, if so, [2] whether it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004).  For purposes of satisfying the first inquiry, "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Houck v. Stickman, 625 F.3d 88, 93-94 (3d Cir. 2010) (quoting Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997)).[11]  See also Hubbard, 378 F.3d at 340 ("A defendant's own late-proffered testimony is not 'new' because it was available at trial.  [The defendant] merely chose not to present it to the jury. That choice does not open the gateway.").  Once the court determines that a habeas petitioner has presented new reliable evidence, the court must then "assess the likely impact of [that] evidence on reasonable jurors." House, 547 U.S. at 538 (citation omitted).

Petitioner objects to the Magistrate Judge's treatment of his Schlup gateway claim for four reasons.  First, he contends that Schlup evidence need not have been unavailable at the time of trial. (Doc. No. 67 at 3.)  Second, he asserts that Schlup evidence need not have been unknown by trial counsel.  (Id. at 4.)  Third, Petitioner argues that Schlup requires a cumulative analysis of all the new evidence, considered in light of the evidence presented at trial and from

---

[10] For example, new reliable evidence may include exculpatory scientific evidence, trustworthy eyewitness accounts, or some other critical physical evidence.  Schlup, 513 U.S. at 324.

[11] In Houck, the Third Circuit adopted a modified definition of "new evidence," as articulated by the Eighth Circuit in Amrine.  The Court of Appeals explained, "[o]verall we are inclined to accept the Amrine definition of new evidence with the narrow limitation that if the evidence was not discovered for use at trial because trial counsel was ineffective, the evidence may be regarded as new provided that it is the very evidence that the petitioner claims demonstrates his innocence." Houck, 625 F.3d at 94.

the perspective of a reasonable finder of fact.  (Id. at 5, 7.)  Fourth, and finally, Petitioner argues

that had the Magistrate Judge properly analyzed his Schlup claim, he would have determined that

Petitioner satisfied the Schlup standard, opening the gateway for the Magistrate Judge to

consider the underlying constitutional claims.  (Id. at 9.)  The Court will briefly address each

objection.

    In support of his claim of actual innocence, Petitioner submitted a 2009 affidavit from his

common-law wife, Maritza, in which she stated that Petitioner was in bed with her on the night

that Slaffman was killed—August 15, 1982.  (Doc. No. 36 at ¶ 75; Doc. No. 38-11, App'x K.)

Petitioner did not state that Maritza was unavailable to testify at his trial, and Respondents

attached a letter from Petitioner's trial counsel, Edward Schulgen, in which explained that he

intended to call Maritza as an alibi witness at trial.[12]  (Doc. No. 53-11, Ex. K.)  Based on this

information, the Magistrate Judge determined that Maritza's 2009 affidavit is not new evidence

for Schlup purposes because she was available to testify at trial.  (Doc. No. 62 at 22.)  Petitioner

objects and contends that this was an erroneous application of the law because "[a] Schlup claim

is not limited to evidence that was unavailable at the time of trial."  (Doc. No. 67 at 4.)  The

Court does not agree.  As previously noted, in the Third Circuit, "evidence is new only if it was

not available at trial and could not have been discovered earlier through the exercise of due

diligence."  Houck, 625 F.3d at 93-94 (quoting Amrine, 128 F.3d at 1230).  The Court agrees

with the Magistrate Judge that Maritza's 2009 affidavit is not new evidence under Schlup and

therefore cannot support Petitioner's gateway claim.[13]

---

[12] Maritza DeJesus was never called to testify at Petitioner's trial.

[13] In finding that the affidavit did not meet the Schlup test, the Magistrate Judge also noted that
    "an affidavit from Petitioner's common-law wife is inherently significantly less exculpatory
    than that of an objective witness."  (Doc. No. 62 at 22.)

To establish his <u>Schlup</u> claim, Petitioner also pointed to statements made to police by Martinez and Tirado in 1982 and 1983, respectively.  (Doc. Nos. 38-4, 5, App'x. D, E.) Petitioner relies on these statements because neither Martinez nor Tirado named Petitioner or Colon[14] as participants in the underlying robbery/murder.  (Doc. No. 36 at ¶¶ 87-88.)  Because Petitioner's counsel possessed these statements at trial in 1984, the Magistrate Judge determined that this evidence cannot be considered new for <u>Schlup</u> purposes.  (Doc. No. 62 at 24.) Petitioner objects to that assessment and contends that whether trial counsel possessed this evidence at the time of trial is immaterial to his <u>Schlup</u> claim.  (Doc. No. 67 at 4.)  Again, the Court does not agree.  For the same reasons discussed above, the Court agrees with the Magistrate Judge that the Martinez and Tirado statements are not new evidence under <u>Schlup</u> and therefore cannot support Petitioner's gateway claim.[15]

In further support of his <u>Schlup</u> claim, Petitioner also relied on the testimony of Jeffrey Wortham ("Wortham").  Wortham, Colon's next-door neighbor, was an eyewitness to the Slaffman shooting.  (Doc. No. 62 at 12.)  At the 2005 retrial of one of Petitioner's co-conspirators, Maisonet, Wortham testified that he did not see Colon in the pizzeria that night. (<u>Id.</u>)  Petitioner also attached a 2009 affidavit in which Wortham confirms that he did not see

---

[14] As noted, <u>supra</u>, Heriberto Colon was the Commonwealth's main witness in its case against Petitioner.  Colon pled guilty to third-degree murder and robbery for his part in the crime.

[15] In determining that the Martinez and Tirado statements did not satisfy the <u>Schlup</u> standard, the Magistrate Judge also relied on the following:

> Although neither statement physically places Petitioner in the pizzeria at the time of the robbery, both statements show that Petitioner participated in the planning of the robbery and threats to kill the co-conspirators.  This is sufficient for a guilty verdict of second-degree murder, the crime for which Judge Murphy found Petitioner guilty.

(Doc. No. 62 at 24.)

Colon in the pizzeria on the night of the shooting.  (Doc. No. 38, App'x. A at ¶¶ 8-9.)  This evidence is meant to refute Colon's testimony, as he testified that he and Petitioner were at the pizzeria during the robbery.[16]  The Magistrate Judge reviewed Wortham's 2005 testimony as well as his 2009 affidavit and observed that neither account contained any statements that Petitioner was not one of the robbers.  (Doc. No. 62 at 24.)  The Magistrate Judge reasoned that the Wortham evidence "is not convincing evidence so probative of innocence that no reasonable juror would have convicted the Petitioner.  Thus, it does not pass the Schlup test."  (Id. at 24-25.)

Petitioner objects to the Magistrate Judge's analysis and contends that "[i]t was improper for the Magistrate Judge to reject the Wortham evidence alone as not meeting the Schlup standard.  The Schlup inquiry is a cumulative one; it requires a consideration of the totality of the new evidence of innocence in light of the evidence that was presented at trial."  (Doc. No. 67 at 6.)  The following evidence is the only "new" evidence for Schlup purposes: 1) Wortham's statements that he did not see Colon in the pizzeria on the night of the shooting, and 2) Colon's testimony during the 1992 trial and 2005 retrial of Maisonet.[17]

> At Petitioner's trial in 1983, Colon testified that Maisonet shot Mr. Slaffman at Petitioner's urging.  In Maisonet's 1992 trial, Colon changed his testimony and stated that Petitioner never urged Maisonet to shoot Mr. Slaffman.  At the Maisonet Retrial in 2005, Petitioner repeated his 1992 testimony in this regard.

---

[16] At trial, Petitioner's defense was reasonable doubt based upon Colon's lack of credibility, as well as evidence that Colon was not even in Philadelphia on the night in question.  (Doc. No. 36 at ¶ 21.)

[17] As discussed, supra, the Court agrees with the Magistrate Judge's assessment that Maritza's affidavit and the Martinez and Tirado police statements are not new evidence.  The Magistrate Judge also determined that Colon's pretrial statement to police that he was in Connecticut on the night of the robbery cannot be new evidence under Schlup because it was presented at trial.  (Doc. No. 62 at 25.)  Petitioner did not object to this finding, conceding that "Colon's pretrial statement certainly is not new evidence . . . ."  (Doc. No. 67 at 7.)

(Doc. No. 62 at 25.)  Despite this change in testimony, Colon's later testimony at Maisonet's

1992 trial confirms Petitioner's presence and involvement in the robbery/murder.  For example:

> Q:    Did Mr. Maisonet have any kind of control over you?
>
> A:    In a way he did, yeah.  Him, [Petitioner] and Cobo, they was threatening
>       me.
> ***
> Q:    What was the control that he had over you?
>
> A:    If I didn't do what they would tell me they would have killed me.
>
> ***
> Q:    And once you got to Stella Street who was there?
>
> A:    It was — it was me — when we got there, me, Orlando Maisonet,
>       [Petitioner], Herbierto Pirela, Jorge Figueroa and Ervin Martinez.
>
> ***
> Q:    Then what happened?
>
> A:    Then me, Orlando Maisonet went inside and [Petitioner], Jorge Figueroa
>       stood outside and Cobo stood outside.
>
> ***
> Q:    Then what happened?
>
> A:    Then after that, I grabbed the money and gave it to [Petitioner] and then
>       one of the guys there had a gun, I don't know if it was the owner or not
>       because I was shaking.  They put the gun on me and that's when I know
>       Maisonet shot them.

<u>Commonwealth v. Maisonet</u>, Nov. Term, 1990, Nos. 3477, 3479-3482 (Phila. C.P. 1992), N.T.

5/6/92 at 14:3-5, 14:8-10, 14:14-17, 15:12-14, 16:12-17.  Colon testified similarly at Maisonet's

retrial in 2005.

According to Petitioner, "[w]hen considered cumulatively the new evidence . . . is

convincing evidence so probative of innocence that no reasonable juror would have convicted

[him]."  (<u>Id.</u> at 7.)  The Court does not agree.  As the Magistrate Judge noted, when he testified at

Petitioner's trial in 1984, Colon had pled guilty to third-degree murder, robbery and conspiracy

14

for his involvement in the Slaffman robbery/murder.  (Doc. No. 62 at 25.)  Furthermore, despite

the fact that Colon's testimony changed over the years to inculpate different defendants, he has

consistently testified that he was present on the night in question.  He has also consistently

testified that Petitioner was involved in the robbery/murder.  Notwithstanding trial testimony that

Colon was living in Connecticut at the time of the crime and Wortham's statements that he did

not see Colon at the pizzeria, the Court agrees that the new evidence does not meet the <u>Schlup</u>

standard.  Considering the new evidence cumulatively with the evidence presented at trial, the

evidence is not so probative of innocence that no reasonable juror would have convicted

Petitioner.  Colon pled guilty for his involvement in the crime and has always maintained that

Petitioner was involved in the robbery/murder.  The Court agrees with the Magistrate Judge's

conclusion that the new evidence does pass the <u>Schlup</u> test.  Petitioner's objection that the

Magistrate Judge did not conduct a proper <u>Schlup</u> analysis is unfounded.  After determining that

Petitioner failed to make out a valid <u>Schlup</u> gateway claim, there was no need for the Magistrate

Judge to consider any of Petitioner's procedurally defaulted claims.

### C.  Petitioner's Third Objection to the Report and Recommendation is Without Merit Because the Magistrate Judge Correctly Found Petitioner's Claim of Trial Court Error to be Procedurally Defaulted and His Ineffective Assistance Claim to be Without Merit

In his Second Amended Petition, Petitioner claimed that the trial court improperly

permitted Martinez and Tirado to invoke their Fifth Amendment privilege against self-

incrimination at his trial.  (Doc. No. 36 at ¶ 51.)  He also alleged that the trial court erred when it

failed to conduct an independent inquiry to determine whether these witnesses actually faced a

danger of self-incrimination.  (<u>Id.</u>)  According to Petitioner, in failing to hold such a hearing and

permitting these two witnesses to remain silent, the trial court violated Petitioner's rights to due

process, a fair trial, compulsory process and to present a defense.  (<u>Id.</u> at ¶ 146)  Petitioner also

15

argued that trial counsel was constitutionally ineffective for failing to request an evidentiary hearing to challenge the factual basis of Martinez's assertion of the Fifth Amendment privilege and acquiescing in the trial court's ruling that the privilege attached.  (Id. at ¶ 163.)

The Magistrate Judge found Petitioner's claim of trial court error to be procedurally defaulted and therefore did not review it on the merits.  (Doc. No. 62 at 18.)  Petitioner objects to the assessment that this claim is procedurally defaulted and contends that it was fairly presented to the state courts, making it reviewable here.  (Doc. No. 67 at 10.)  The Magistrate Judge also recommended that Petitioner's claim of ineffective assistance of counsel be denied, after finding that the Pennsylvania courts' rulings on this claim were neither contrary to nor unreasonable in light of clearly established law.  (Doc. No. 62 at 19.)  For multiple reasons, discussed infra, Petitioner also objects to this conclusion.  (Doc. No. 67 at 10-11.)  The Court will discuss each objection in turn.

In the Second Amended Petition, Petitioner claimed that the trial court improperly permitted Martinez and Tirado to invoke their Fifth Amendment privilege against self-incrimination.  (Doc. No. 36 at ¶ 51.)  He also alleged that the trial court erred when it failed to hold a hearing to determine whether these witnesses actually faced a danger of self-incrimination if they testified at Petitioner's trial.  (Id.)  The Magistrate Judge found this claim of trial court error to be procedurally defaulted because it was raised for the first time in Petitioner's 2005 PCRA petition, which the PCRA court found to be time-barred.  (Doc. No. 62 at 18.)  The Magistrate Judge acknowledged that Petitioner presented a similar claim in his first PCRA petition in 1996 and on PCRA appeal (Id. at 17), but mere similarity of claims is not sufficient.

Under the exhaustion requirement, a petitioner must show that the claim raised in the federal habeas petition was "fairly presented" to the state courts.  Picard v. Connor, 404 U.S.

16

270, 275 (1971).  See also Baldwin v. Reese, 541 U.S. 27, 29 (2004).  This requires a federal

habeas petitioner to demonstrate that "the claim brought in federal court [is] the substantial

equivalent of that presented to the state courts."  Lesko v. Owens, 881 F.2d 44, 50 (3d Cir. 1989)

(citations omitted).  In other words, "[b]oth the legal theory and the facts supporting a federal

claim must have been submitted to the state courts."  Id.  (citing Ross v. Petsock, 868 F.2d 639,

641 (3d Cir. 1989); Gibson v. Scheidemantel, 805 F.2d 135, 139 (3d Cir. 1986)).  Substantial

equivalence is not sufficiently demonstrated if only a "somewhat similar state-law claim was

made."  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (quoting Anderson v. Harless,

459 U.S. 4, 6 (1982)).

     Petitioner objects to the Magistrate Judge's finding of procedural default and contends

that this claim was fairly presented to the state courts in his first PCRA petition.  (Doc. No. 67 at

10.)  On PCRA appeal, Petitioner presented the following claim to the Superior Court of

Pennsylvania:

> Trial counsel was ineffective for his failure to raise in post-verdict motions and on
> appeal the issue of the trial court's error in failing to conduct a hearing to
> determine whether a basis existed for Carlos Eduardo Tirado's and Erwin
> Martinez' assertion of the Fifth Amendment Privilege when called as defense
> witnesses.  As a result, the defendant is entitled to post-conviction relief in the
> form of a new trial.

(Doc. No. 53-5, Ex. E at 8) (emphasis added).  While the Court was unable to locate the original

PCRA petition that was presented to the lower court, it is clear from Petitioner's appellate brief

that he previously presented the same question of whether this alleged ineffective assistance of

counsel warranted a new trial.  (See id. at 4.)  The Magistrate Judge was correct that the current

iteration of Petitioner's claim of trial court error was not fairly presented to the state courts.

Though the claims are similar, they are not substantially equivalent.  Namely, the legal theories

are not the same.

In his first PCRA petition, Petitioner made an ineffective assistance of counsel claim. While Petitioner discussed the trial court's alleged errors, those facts were set forth to establish trial counsel's ineffective assistance.  Here, on the other hand, Petitioner seeks relief based on the trial court's failure to hold a hearing to determine whether Martinez and Tirado could lawfully assert a Fifth Amendment Privilege and refuse to testify at Petitioner's trial.  (Doc. No. 36 at ¶ 51.)  It is not sufficient that a somewhat similar claim of ineffective assistance of counsel was presented to the PCRA courts.  Therefore, the Magistrate Judge was correct in concluding that this claim of trial court error is procedurally defaulted.

As previously noted, in his Second Amended Petition, Petitioner also argued that trial counsel was constitutionally ineffective for failing to request an evidentiary hearing to challenge the factual basis of Martinez's assertion of the Fifth Amendment privilege and acquiescing in the trial court's ruling that the privilege attached.  (Id. at ¶ 163.)  The Magistrate Judge reviewed this claim on the merits and recommended that it be denied.  (Doc. No. 62 at 19.)  Petitioner raises the following objections in response: 1) The Magistrate Judge improperly applied the AEDPA where the state court ruling did not even address the federal constitutional claims presented; 2) The Magistrate Judge could not rely on state court findings with respect to this claim because the Superior Court's determination of the facts is clearly unreasonable; and 3) If the Magistrate Judge had conducted a proper Schlup analysis, any default of this claim should be excused. (Doc. No. 67 at 10-11.)  First and foremost, the Court has already determined that Petitioner did not set forth a valid Schlup gateway claim.  Therefore, the procedural default of his claim of trial court error would not be excused.  The Court now turns to Petitioner's first two objections.

Petitioner contends that had Martinez been required to testify at Petitioner's trial, his testimony "would have been devastating impeachment undermining Colon's accusations against

18

Petitioner.  It would [have] provided affirmative evidence of Petitioner's innocence."  (Doc. No.

36 at ¶ 149.)  According to Petitioner:

> On November 22, 1982, Erwin Martinez gave a statement to the Philadelphia Police Department, indicating that he and three other persons had participated in the robbery and murder of Mr. Slaffman.  Mr. Martinez did not name either Petitioner, or the Commonwealth's star witness, Heriberto Colon, as having participated in the robbery-murder.

(Doc. No. 36 at ¶ 147.)  The relevant portions of that statement are as follows:

> The day of the Hold Up I was inside Georgies [sic] house, they were celebrating Georgies [sic] mother's birthday.  It was about 2:30AM; COBO[18] came and told me that I had to go with him to a Hold Up because [Petitioner] had send [sic] for us (Me, DICE, GEORGIE and COBO) and that if we did not wanted [sic] to go he (COBO) was going to kill us.
>
> ***
>
> [Later that day] [Petitioner] went to 251 Stella with Felix[19] (PIRELA) and he was mad.  He got the rifle and gave them to Felix and Felix took them to his house.  I stayed inside my house because [Petitioner] was saying that he wanted to kill me and Georgie because we lost the money.
>
> ***
>
> Q:      Did you see Eddy (Heriberto COLON) inside the restaurant?
>
> A:      No.

(Doc. No. 38-8, App'x D) (capitals in original).  Petitioner believes that Martinez's statement to

police "was powerful exculpatory testimony squarely contradicting the testimony presented by

confessed perjurer Heriberto Colon."  (Doc. No. 36 at ¶ 164.)  He therefore argued that trial

counsel was constitutionally ineffective for failing to request a hearing in order to determine

whether it was appropriate for Martinez to assert his Fifth Amendment Privilege and refuse to

testify at Petitioner's trial.  (Id.)

---

[18] "Cobo" is a designation for Heriberto Pirela, Petitioner's brother and co-conspirator.

[19] Felix Pirela is one of Petitioner's brothers.

Petitioner raised this claim in his first PCRA petition, and the PCRA court found the claim to be meritless.  On appeal, the Superior Court of Pennsylvania affirmed the denial of Petitioner's ineffective assistance of counsel claim.  The Magistrate Judge relied on the state court findings when considering this claim in the Second Amended Petition.  Under the AEDPA, a habeas petition may be granted if the state court decision "involved an unreasonable application of clearly established Federal law . . . ."  28 U.S.C. § 2254(d)(1).  Petitioner objects to the Magistrate Judge's reliance on the Superior Court's decision regarding this claim because he contends that the decision involved an unreasonable application of federal law.  Specifically, he contends that the Superior Court did not address the federal constitutional claims he presented.  (Doc. No. 67 at 10.)

To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate the following: 1) counsel's representation was objectively unreasonable; and 2) but for counsel's deficient representation, there is a reasonable probability that the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668 (1984).  In considering Petitioner's ineffective assistance claim, the Superior Court explained that Petitioner was required to show that: "there is (1) arguable merit to the underlying claim, (2) the course chosen by counsel does not have a reasonable basis designed to effectuate the appellant's interest, and (3) the appellant demonstrates prejudice."  Commonwealth v. Pirela, No. 1240 Phila. 1998, 4 (Pa. Super. Ct. Aug. 23, 1999) (unpublished memorandum opinion) (citing Commonwealth v. Pearson, 685 A.2d 551, 555-56 (Pa. Super. Ct. 1996) (en banc)).  Though the Superior Court relied on state law to evaluate Petitioner's ineffective assistance claim, that standard mirrors the federal counterpart annunciated in Strickland.  In analyzing this claim, the Superior Court found that even if the trial court had compelled Martinez to testify, "there is no reasonable probability that the result of the

20

trial would have been different." Pirela, No. 1240 Phila. 1998, at 6. Because Petitioner could not demonstrate the necessary prejudice, inter alia, the Superior Court affirmed the denial of his ineffective assistance claim. This was not an unreasonable application of federal law, and the Magistrate Judge appropriately relied on the Superior Court's finding. Petitioner's objection is unfounded.

Petitioner also objects to the Magistrate Judge's reliance on the state court decision because he contends that the Superior Court's decision was based on incorrect facts. Aside from an unreasonable application of federal law, a habeas petition may also be granted if the state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). In concluding that Petitioner was not prejudiced by trial counsel's failure to request a hearing regarding Martinez's Fifth Amendment Privilege, the Superior Court relied on a variety of facts. Petitioner contends that the Superior Court made two factual errors. First, "[t]he Superior Court incorrectly stated that Martinez named [Petitioner] as one of the participants in the robbery." (Doc. No. 67 at 10.) Second, "[t]he Superior Court also incorrectly stated that, 'in his own testimony, [Petitioner] placed Colon at the scene of the robbery.'" (Id. at 11.) Because these factual findings are allegedly false, Petitioner contends that the Magistrate Judge was not permitted to rely on them and should have conducted a de novo review of this claim. (Id.) Petitioner is incorrect.

The record fairly supports the factual findings made by the state court. First, in his statement to police, Martinez explained that a few hours before the robbery, "COBO came and told me that I had to go with him to a Hold Up because [Petitioner] had send [sic] for us . . . and that if we did not wanted [sic] to go he (COBO) was going to kill us." (Doc. No. 38-8, App'x D) (capitals in original). He also told police: "I stayed inside my house because [Petitioner] was

saying that he wanted to kill me and Georgie because we lost the money." (Id.) This testimony supports the state court's finding that Martinez "named [Petitioner] as a participant in the robbery/murder." Pirela, No. 1240 Phila. 1998, at 5. Second, the record also fairly supports the Superior Court's finding that Petitioner himself placed Colon at the scene of the crime. Id. at 5-6. Petitioner is correct that he did not testify to this at his trial; in fact, he did not testify at all. However, Philadelphia Police Officer Miguel Deyne testified that Petitioner placed Colon at the scene of the crime in a statement he gave to police on September 30, 1982. Commonwealth v. Pirela, Oct. Term, 1983, Nos. 2387-2392 (Phila. C.P. 1984), N.T. 3/19/84 at 5-10. Specifically, Petitioner told Officer Deyne that "Eddie"— Heriberto Colon—was inside the restaurant with a long gun when the robbery/murder took place. Id. at 8. Officer Deyne's testimony fairly supports the Superior Court's finding that Petitioner himself placed Colon at the scene of the crime. Because the Superior Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented, the Magistrate Judge was permitted to rely on the state court's findings. Petitioner's contentions to the contrary are without merit.

### D.   Petitioner's Fourth Objection to the Report and Recommendation is Without Merit Because the Magistrate Judge Properly Denied His Schlup Gateway Claim and Was Therefore Not Required to Review Procedurally Defaulted Claims

The Court is not persuaded by Petitioner's fourth and final objection. In his Second Amended Petition, Petitioner argued that he was denied his rights to be tried only while competent, to be meaningfully present and participate in the trial, to the assistance of counsel, and to confrontation, due process, and to present a defense when he was not provided the services of a Spanish-language interpreter during critical portions of his trial.[20] (Doc. No. 36 at

---

[20] A Spanish-language interpreter, Frank Rivera, was assigned to the courtroom during Petitioner's trial. (Doc. No. 36 at ¶ 182.) Petitioner contends that a second interpreter was required to translate specifically for his benefit.

¶ 197.)  He also claimed that trial counsel was constitutionally ineffective for failing to object and properly redress this denial.  (Id. at ¶ 198.)  The Magistrate Judge found this claim to be procedurally defaulted.[21]  (Doc. No. 62 at 19.)  Petitioner objects to that finding and contends that his Schlup gateway claim excuses the procedural default of this claim.  (Doc. No. 67 at 11.)  However, as discussed above, Petitioner failed to meet the Schlup standard.  Petitioner's objection is unfounded.  This claim remains procedurally defaulted.

## V.    CONCLUSION

For the aforementioned reasons, the Court will deny Petitioner's objections to the Magistrate Judge's Report and Recommendation.  The Court will approve and adopt the Report and Recommendation, denying the Second Amended Petition for a Writ of Habeas Corpus.  An appropriate Order follows.

---

[21] Despite concluding that this claim is procedurally defaulted, the Magistrate Judge nevertheless reviewed it on the merits and found that "Petitioner does not demonstrate any specific harm brought about by the lack of a second translator nor the testimony of any witnesses that would have been conducted differently."  (Doc. No. 62 at 20.)  Therefore, even if this claim were not procedurally defaulted, it would still fail on the merits.